THE STATE EX REL. VITS, Respondent, vs. MANITOWOC WATERWORKS COMPANY, Appellant.

114     487<br>61 LRA 112n

*April 25—May 13, 1902.*

*Municipal ordinances: Construction: Waterworks: Minimum rates.*

1. A municipal ordinance granting a franchise to a waterworks company is not, in case of ambiguity, to be construed most strongly against the company, but by the same rules that govern in the construction and interpretation of statutes.
2. Such an ordinance fixed maximum rates which might be charged to private consumers for certain purposes, and continued: "For other domestic purposes, proportionate to the above, but the lowest annual rate in any case shall be five dollars. Manufacturing and special uses, rates to be based on quantity of water used. All parties have the privilege of furnishing water meter and paying only for water actually used at rates varying from 20 cents to 30 cents per 1,000 gallons, viz: Consumption less than 1,000 gallons per day, 30 cents," etc. When the ordinance was enacted, meters for domestic consumers were

comparatively unknown. *Held*, that the provision relating to meters applied only to takers of water for manufacturing and special uses, and that the minimum rate for domestic purposes was five dollars.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

*Mandamus* to compel the defendant to turn on water on premises owned by the relator. The petition alleges the defendant is a corporation, and the assignee of a franchise granted for the purpose of securing a water supply for public and private purposes in the city of Manitowoc. One of the conditions of the ordinance granting the franchise was that all persons had the privilege of furnishing water meters and paying for the water used at rates not exceeding thirty cents per 1,000 gallons. Relator put in a meter, and for the year ending September 30, 1899, used 3,787 gallons, which, at the maximum rate, would entitle defendant to $1.14. This sum was tendered to defendant, and refused. On November 1, 1899, the defendant cut off relator's water supply, and has refused to turn on water when demanded. An alternative writ of *mandamus* was issued, to which the defendant made due return, claiming that a proper construction of the ordinance in question fixed the minimum rate for a supply of water for domestic uses at $5 per year, which sum the relator refused to pay, and that defendant turned off the water because of such refusal, believing it had a right so to do. So much of the ordinance as is material to this litigation is as follows:

"SEC. 17. Said grantees shall furnish abundant supply of water for any and all inhabitants of Manitowoc, upon said pipe system, for any and all reasonable purposes, under such conditions and regulations as said grantees may impose, and may enforce such regulations by cutting off the water supply from such consumers or in any other manner. And said grantees may charge and collect, as their annual rates to such private consumers, prices equal to but not to exceed the following."

Here follows a table fixing maximum rates for domestic and other uses. The section continues thus:

"For other domestic purposes, proportionate to the above, but the lowest annual rate in any case shall be five dollars. Manufacturing and special uses, rates to be based on quantity of water used. All parties have the privilege of furnishing water meter and paying only for water actually used at rates varying from 20 cents to 30 cents per 1,000 gallons, viz.: Consumption less than 1,000 gallons per day, 30 cents; 1,000 to 2,000 gallons, 25 cents; 2,000 to 4,000 gallons, 20 cents; 4,000 gallons or over, 15 cents per 1,000 gallons. And 13, 12 and 10 cents where much greater quantity is desired. And the water rents charged by said grantees to consumers for domestic and manufacturing purposes shall not exceed the average rates charged at other cities in Wisconsin similarly situated, being supplied by a like system."

On the trial the defendant produced evidence showing that when the ordinance was passed, in 1887, the use of meters in private residences in cities of the size of Manitowoc was unknown; that the cost of delivering metered water was $2.50 per year for each customer; that $5 per year was a reasonable minimum value for metered water, and smaller than the average minimum rates charged in other cities in Wisconsin; and that a water company could not safely do business if it were compelled to allow all customers taking water for domestic purposes to pay according to the amount used, without reference to the fixed minimum rate.

The trial court made findings in favor of the relator to the effect that the cutting off of the water from his premises was wrongful and unjustified. Judgment for six cents damages and for a peremptory writ of *mandamus* was entered, from which defendant takes this appeal.

For the appellant there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash.* They argued, among other things, that ordinances, by-laws, rules, and regulations concerning the price a water company may charge private consumers must be reasonable and without discrimination. This

makes it impossible to apply the rule of interpretation governing public grants. The rule of reasonableness under all the attendant circumstances must be sought for, rather than a rule favorable to the public. The public, the city, is not a party to, and is not interested in, this controversy. *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539; *Spring Valley W. Works v. San Francisco* (Cal.) 6 L. R. A. 756; *Rushville v. Rushville N. G. Co.* (Ind.) 15 L. R. A. 321; *Louisville, E. & St. L. C. R. Co. v. Wilson* (Ind.) 18 L. R. A. 105; *Cowden v. Pacific Coast S. S. Co.* (Cal.) 18 L. R. A. 221; *Lough v. Outerbridge,* 25 L. R. A. 674; *American W. W. Co. v. Nebraska* (Neb.) 30 L. R. A. 447; *Griffin v. Goldsboro W. Co.* (N. C.) 41 L. R. A. 240; *Brymer v. Butler W. Co.* (Pa. St.) 36 L. R. A. 260; *San Diego W. Co. v. San Diego* (Cal.) 38 L. R. A. 460.

For the respondent there was a brief by *Schmitz & Burke,* and oral argument by *R. W. Burke.* To the point that the ordinance ought to be construed strictly in favor of the public and against the water company, they cited Sutherland, Stat. Const. 485–487; *Bartram v. Central T. Co.* 25 Cal. 283; *Hartford B. Co. v. Union F. Co.* 29 Conn. 210; *Shorter v. Smith,* 9 Ga. 517; *McLeod v. Burroughs,* 9 Ga. 213.

BARDEEN, J. In his written opinion the trial court held that if there was any ambiguity in the ordinance, or the meaning of the words used was doubtful, they were to be taken most strongly against the defendant. He admitted that an ambiguity arose in the ordinance from the two conflicting provisions, one fixing "the lowest annual rate in any case" at five dollars, and the other giving all persons the privilege to use meters and to pay only for water actually used at a specified rate per gallon. In that view he permitted testimony to be introduced of the surrounding circumstances, of the rates fixed in other cities, and of the actual cost of delivering metered water, but all this evidence was brushed aside in

obedience to the rule of construction he believed ought to prevail. We agree with him in the conclusion that the true intention of the parties is not perfectly clear. We think, however, the ordinance must be construed by the same rules that govern in the construction and interpretation of statutes. *Ashland W. Co. v. Ashland Co.* 87 Wis. 209, 58 N. W. 235. One of those rules is that the whole statute must be considered, and each clause construed by the light thrown upon it by every other. The ruling intention gathered from all the language used is to be sought for and, when discovered, given effect. This rule is elementary, and needs no citation of authorities for its support. Another rule is that the construction must be such as will produce reasonable results, if the language used will permit it. If one construction would be oppressive and burdensome to one of the parties, and another, equally permissible, will avoid the hardship, the latter should be adopted in preference to the former.

In the light of these rules, let us examine the ordinance in question. The company was bound to furnish an abundant supply of water for any and all inhabitants of the city for all reasonable purposes. Certain of these purposes were expressly mentioned, and the company was entitled to collect an annual rate not to exceed the one specified. Then it says: "For other domestic purposes, proportionate to the above, but the lowest annual rate in any case shall be five dollars." The intent seems clear to establish a maximum and a minimum rate for every kind of domestic use. It then takes up a new subject, "manufacturing and special uses," to be paid for on the basis of water actually used. Then follows the clause which has given all the trouble: "All parties have the privilege of furnishing water meter and paying only for water actually used at rates varying from 20 cents to 30 cents per 1,000 gallons." This the court construed to cover all persons and all uses, whether domestic, manufacturing, or special, on the ground that it must be construed most strongly against the

defendant. Standing alone, and divorced from its surround-
ings, it might bear that construction; but, when read in con-
nection with all that precedes and that which follows, we do
not think this construction permissible. The fact proven,
that meters for domestic consumers were comparatively un-
known at that time, is a circumstance tending to show that
such consumers were not in mind when this language was
used. The fact that, in the language immediately following,
rates for "consumption less than 1,000 gallons per day" were
fixed, indicates with reasonable certainty that meter rates
were being fixed for "manufacturing or special uses,"—for
users who used such large quantities as to require a record
of daily use to be kept. The provision following fixing rates
where still greater quantities were used indicates that the
subject in mind still had reference to the "manufacturing or
special uses" referred to. Reading the whole section, and
giving all its parts a reasonable construction, in the light of
the situation of the parties, we think it quite evident that
when the ordinance speaks of "all parties," etc., it has refer-
ence to all parties taking water for "manufacturing or special
uses," and was not intended to cover users for domestic pur-
poses, which had already been provided for. If parts of the
ordinance are to be singled out and construed as though stand-
ing alone, then there would be as good reason for saying that
the clause, "but the lowest annual rate in any case shall be
five dollars," applies to all consumers, as to say that the por-
tion referring to "all parties," etc., does not refer to its
immediate context, but does refer to every person taking
water, regardless of its use. If these two provisions are in
seeming conflict, then such construction should be given, if
possible and reasonable, as to harmonize and remove such
conflict. This can be done in the manner suggested. We
arrive at this conclusion the more readily because it harmon-
izes the ordinance, acquits the parties of any intention to
discriminate against domestic users at the faucet rate, in-

sures the company a reasonable return above the cost of furnishing water, and seems more nearly in accordance with the intention of the parties as gathered from the surrounding circumstances.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to enter judgment denying the writ.